[No. 9873.  Department One.  August 19, 1912.]

WILLIAM MILLER, *Respondent*, v. COMMERCIAL UNION
ASSURANCE COMPANY, LIMITED, *Appellant*.[1]

PLEADING — INCONSISTENT PLEADINGS — CORRECTION.  Where it is
manifest from the whole record that the defendant only desired to
have an offset, which had been inconsistently pleaded as a counter-
claim in a cross-complaint, defendant. should be allowed to correct
the pleading by dismissing the cross-complaint.

INSURANCE — AUTOMOBILE  POLICY — MISREPRESENTATIONS — WAR-
RANTIES—EFFECT.  In an application for an automobile policy, state-
ments that it was a new machine and not second hand and had cost
a specified sum, are warranties and not representations, where the
parties have stipulated in the policy that the statements are ma-
terial and if untrue shall avoid the policy; and being affirmative
and not promissory warranties, no recovery can be had on the policy
where the statements were untrue.

Appeal from a judgment of the superior court for Spo-
kane county, Hinkle, J., entered June 5, 1911, upon findings
in favor of the plaintiff, in an action upon a policy of fire
insurance, after a trial on the merits to the court.  Reversed.

*Post, Avery & Higgins*, for appellant.
*Curtiss & Remele*, for respondent.

CROW, J.—This action was commenced by William Miller
against Commercial Union Assurance Company, Limited, a
corporation, to recover upon a fire insurance policy issued
on an automobile owned by the plaintiff.  The trial judge
made findings upon which judgment in plaintiff's favor was
entered.  The defendant has appealed.

The policy was issued on June 25, 1910, and the auto-
mobile was destroyed by fire on July 5, 1910.  Respondent
made a written application, material portions of which read
as follows:

[1]Reported in 125 Pac. 782.

"To Commercial Union Assurance Company, Limited, . . .

"Insurance is wanted by Wm. Miller for the term of one year from June 25th, 1910, at noon, until June 25th, 1911, at noon, for the sum of $2,000 upon the body, machinery and equipment of the automobile hereinafter described, which description is hereby made a warranty by the applicant . . .

"Particulars and Description of Automobile. . . .

"Original cost to applicant, including equipment, $4,300.

"Present value of automobile, $2,600. . . .

"State whether automobile was new or second hand when purchased by applicant. New.

"If second hand, state when purchased and give name and address of party from whom purchased. . . . . .

"State whether the automobile is fully paid for. Yes.

"State whether it is mortgaged or encumbered. No. . .

"Dated at Spokane, Wash., 6-25, 1910.

"Wm. Miller, Applicant."

Endorsed on the application, under the heading "Conditions of Policy," was the following stipulation, which was also contained in the policy:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof, or if the interest of the insured in the automobile be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after loss."

The policy recited that:

"Commercial Union Assurance Company, Limited, of London, England.

"In consideration of fifty and no-100 dollars, to it agreed to be paid by the insured hereinafter named, and of the statements made in the application for this insurance, which is hereby made a warranty and a part of this policy. Does insure Wm. Miller, for the term of one year from the twenty-fifth day of June, 1910, at noon, to the twenty-fifth day of June, 1911, at noon, against loss or damage to the automobile hereinafter described, its body, machinery and equipment, while attached to and forming a part of said automo-

bile.   To an amount not exceeding two thousand and no-100 dollars. . . . ."

Respondent pleaded the issuance of the policy, payment of the premium, the destruction of the automobile by fire, respondent's compliance with all terms and conditions of the policy, and appellant's refusal to pay.   In its answer appellant alleged that the statements of the application became and were a part of the policy; that they were untrue in that the automobile was not new when purchased by respondent; that he was not its owner when the application was made; and that it was not free from incumbrance; all of which was unknown to appellant but was known to respondent.   For a counterclaim and cross-complaint, the appellant pleaded the issuance of the policy; that the premium had not been paid, and asked judgment therefor.   In his reply, respondent admitted that he made the written application; that its statements became and were a part of the policy; and that the automobile was not new when purchased by him; but alleged that appellant inspected the machine and knew its condition; that respondent's statements were not material to the risk; that appellant was not deceived; and that, although respondent at the time of making the application, owed his vendor $150 on purchase price, the machine had then been delivered to respondent, and no lien existed thereon.   Replying to the cross-complaint, respondent admitted that he was indebted to appellant for the premium, and alleged that at the time of the preparation of the complaint, which was verified by one of his attorneys, he was not within the state of Washington, and that his attorneys by mistake alleged the premium had been paid.

After the issues were completed, appellant moved for judgment on the pleadings for the premium and costs.   Respondent filed an offer to confess the motion, provided the premium should be applied in reduction of his claim.   Thereupon appellant moved the court for an order permitting it to amend its motion for judgment to read as follows:

"Comes now the defendant in the above entitled cause and moves the court for an order for a judgment on the pleadings that plaintiff take nothing herein and that defendant have judgment for its costs."

Upon hearing, all of the motions were denied by Honorable E. H. Sullivan, one of the judges of the superior court. Thereafter the action was called for trial, without a jury, before Honorable J. D. Hinkle, another judge of the same court.   Before any other proceedings were had, appellant's attorney made the following statement and request:

"There is a thing in° this case that your Honor probably is not in a position to appreciate at this time.   In all these pleadings you will observe that Mr. Curtiss [counsel for respondent] consents that we take judgment for forty dollars in this case, and we made a motion for judgment on the pleadings.   That was before Judge Sullivan.   During that argument we made a subsequent motion asking that the case be dismissed, although asking for the forty dollars.   That is a matter of record here.   Judge Sullivan, on account of the arguments that were made, probably took the view, or expressed himself at the time when that second motion was called to his attention, that that amended the counterclaim to be in the alternative.   Now, if there is any doubt in your Honor's mind about that—I have been acting on Judge Sullivan's opinion—if your Honor has any doubt about that, I will make a motion dismissing that counterclaim.   .   .   .   In our cross-complaint we ask for forty dollars due on the policy. We want the case dismissed or else we want the forty dollars. In other words, we cannot claim there is forty dollars due us, and at the same time say the policy is void."

Upon objection of respondent's counsel, this request to dismiss the counterclaim was denied, and the trial proceeded upon the pleadings as drawn.   The trial judge found the amount of respondent's loss, deducted the premium therefrom, and entered judgment for the remainder.

Appellant contends that the policy was void by reason of the untruthful statements of respondent's application; that the statements were warranties which became a part of the policy; and that the trial court erred in not dismissing the

action.   Respondent insists that the representations or warranties were immaterial; that the appellant cannot by its answer declare the policy void for the purpose of defeating a recovery, and at the same time declare it valid for the purpose of collecting the premium; and that appellant has estopped itself from attacking the validity of the policy by seeking a recovery of the premium.

It is apparent that the allegation of the complaint that the premium had been paid, when in fact, as respondent admits, it had not been paid, induced appellant to plead its nonpayment.   It is further manifest, from the entire record, including appellant's attempted correction of its motion and its offer to dismiss the cross-complaint, that appellant only desired to have the unpaid premium deducted from any judgment in respondent's favor, should the court sustain the policy.   If appellant had collected the premium, and without tendering or returning it to respondent had attempted to avoid the policy, a different question would be presented.   Respondent has in no manner been misled, as he has not paid the premium.   While appellant's pleadings may be somewhat inconsistent, it is nevertheless apparent that it is not declaring the policy void for the purpose of preventing respondent's recovery, while asserting its validity for the purpose of collecting the premium.   The trial court should have granted the motion to dismiss the cross-complaint.   Appellant, without collecting the premium, denied its liability at all times prior to the commencement of this action.   If the policy was void when the action was commenced, no contract then existed, and we cannot now hold that a new contract created by estoppel has since come into existence.   Authorities cited by respondent in support of his contention are cases in which premiums had been collected from the assured, and in which the insurer questioned the validity of the policies while retaining the premiums and without refunding the same.   No such facts appear in this action.

The controlling question on this appeal is whether the policy was void by reason of untruthful statements contained in respondent's application. It is undisputed that his statements that the auto was new when purchased by him, that it was not a second-hand machine, and that it had cost him $4,300 were all untrue. There was disputed evidence tending to show that other statements were untrue. Ordinarily a misrepresentation of the assured will not affect the validity of a policy unless it is material to the risk or, by the terms of the application and policy, has become an affirmative warranty. When the parties by the terms of their contract expressly stipulate that a representation shall be regarded as material, it ceases to be a representation only, and becomes a warranty.

"Warranties differ from representations, then, in that falsity of a representation will defeat the contract only where it is material, as representations are merely inducements to the making of the contract, while in case of a warranty the statement is made material by the very language of the contract, so that a misrepresentation of a matter warranted is a breach of the contract itself. Therefore the falsity of a statement which is made a warranty will avoid the contract without regard to whether it can be considered as material in any way to the risk or the loss." 19 Cyc. 683, and cases cited.

When a policy is issued on the faith of representations of the assured as to existing facts, such representations become warranties, with the result that, if they be not strictly true as made, the policy, without regard to their materiality, will not take effect. The parties, having agreed upon the materiality of the statements warranted, are thereafter precluded from questioning their materiality. In *Hoeland v. Western Union Life Ins. Co.*, 58 Wash. 100, 103, 107 Pac. 866, this court said:

"The rule is that, when a representation made by an applicant for insurance is carried into a contract and expressly made a part of it, it becomes a warranty, and its materiality

is settled by the agreement of the parties.   Elliott, Insurance, § 102; *White v. Provident Sav. Life Assur. Soc.*, 163 Mass. 108, 39 N. E. 771, 27 L. R. A. 398; *Rice v. Fidelity & Deposit Co.*, 103 Fed. 427. The difference in legal effect between a warranty and a representation is that the falsity in a warranty in any particular is fatal to a recovery upon the policy, whilst a representation to have that effect must refer to some fact material to the insurance, and it must be false or fraudulent.   *Weigle v. Cascade Fire & Marine Ins. Co.*, 12 Wash. 449, 41 Pac. 53; Elliott, Insurance, § 114."

In *Poultry Producers' Union v. Williams*, 58 Wash. 64, 66, 107 Pac. 1040, 137 Am. St. 1041, we said:

"A warranty must be strictly true.   *Rice v. Fidelity & Deposit Co.*, 103 Fed. 427.   A representation need only be substantially true.   *Missouri K. & T. Trust Co. v. German Nat. Bank*, 77 Fed. 117.  'The crucial distinction between a representation and a warranty is that the one is not, and the other is, a part of the contract between the parties, and that the truth of the one is not, and the truth of the other is, a condition precedent to a recovery upon the policy or bond to which they relate.'   *Rice v. Fidelity & Deposit Co., supra.*"

Respondent contended, and the trial court held, that the representations contained in the application, which became warranties by agreement of the parties, were not material to the risk; that they in no way contributed to or caused the loss; and that they should not avoid the policy.   The difficulty with this conclusion is that it ignores the fact that the parties have contracted and agreed that the representations *shall be material*, and that if untrue they *shall avoid the policy*.

"One of the very objects of the warranty is to preclude all controversy about the materiality or immateriality of the statement.   The only question is, has the warranty been kept? There is no room for construction; no latitude; no equity. If the warranty be a statement of facts, it must be literally true; if a stipulation that a certain act shall or shall not be done; it must be literally performed."   1 May, Insurance (4th ed.), § 156.

Warranties are of two kinds, affirmative and promissory. The former relate to and warrant the present or past existence of particular facts, upon the exact truth of which the inception of the contract of insurance depends; and if untrue will avoid the policy. The latter, which are of an executory character, warrant that something shall be done or omitted after the policy takes effect and during its continuance, and will avoid the contract if the thing to be done or omitted be not done or omitted as warranted. 1 May, Insurance (4th ed.), § 157; 19 Cyc. 708; *Algase Co. v. Corporation of The Royal Exchange Assurance*, 68 Wash. 173, 122 Pac. 986.

If the warranties now under consideration were of a promissory character, such as the warranty before this court in *Port Blakely Mill Co. v. Springfield Fire and Marine Ins. Co.*, 56 Wash. 681, 106 Pac. 194, 28 L. R. A. (N. S.) 593, a case cited by respondent, a different question would be presented; but they are affirmative and not of a character to which the rule announced in the *Port Blakely Mill Co.* case may be applied. The evidence shows that the representations or affirmative warranties were untrue, and that respondent knew they were untrue. The policy did not take effect, and cannot be enforced.

Respondent contends, (1) that the application was prepared by appellant's authorized agent, and (2) that appellant inspected the auto before issuing the policy. Without quoting the evidence, we state our conclusion that it fails to sustain either of these contentions.

The judgment is reversed, and the cause remanded with instructions to dismiss.

CHADWICK, GOSE, and PARKER, JJ., concur.